UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

KJ-PARK, LLC,

                Plaintiff,

      v.

MATCH GROUP, LLC, et al.,

                Defendants.

Case No.  23-cv-02346-VKD

**ORDER RE MARCH 13, 2024 DISCOVERY DISPUTE RE PLAINTIFF'S DOCUMENT REQUESTS**

Re: Dkt. No. 77

      Plaintiff KJ-Park, LLC ("KJ-Park"), defendants Match Group, LLC and Match Group, Inc. (collectively, "Match"), and non-party Jones Lange LaSalle Americas, Inc. ("JLL") ask the Court to resolve a dispute concerning KJ-Park's efforts to obtain discovery of information relating to Match leasing alternative space.  Dkt. No. 77.  The Court finds this dispute suitable for decision without oral argument.  *See* Civil L.R. 7-1(b).

      For the reasons explained below, the Court sustains Match's and JLL's objections to KJ-Park's document requests.

## I.      BACKGROUND

      In the operative complaint, KJ-Park claims that Match breached a lease agreement and a guaranty concerning a building located at 2555 Park Boulevard in Palo Alto, California.  *See* Dkt. No. 72.  Match denies KJ-Park's claims and asserts several affirmative defenses, including the affirmative defenses of "unliteral mistake" and "mutual mistake."  *See* Dkt. No. 76 at 6-7.  JLL is Match's real estate broker.  *See* Dkt. No. 77-1 at ECF 3; Dkt. No. 77-2 at ECF 3.  The Court has federal diversity jurisdiction, pursuant to 28 U.S.C. § 1332.

      This discovery dispute concerns KJ-Park's RFPs 24-27 and 33-35 to Match and RFPs 17-

19 by subpoena to JLL.  Dkt. Nos. 77-1, 77-2, and 77-3.  KJ-Park asks Match to produce:

1) "All communications" between Match and any other person regarding its "decision to lease space in San Francisco instead of the [2555 Park Boulevard premises] in 2019" (RFPs 24-27);

2) A copy of Match's lease for 116 New Montgomery Street, Suite 700, in San Francisco (RFP 33);

3) "All letters of intent" relating to Match's "interest in any other commercial properties to lease in 2019 other than the [2555 Park Boulevard premises]" (RFP 34); and

4) "Any marketing brochures or fliers" for other space Match was "interested in leasing in 2019 other than the [2555 Park Boulevard premises]" (RFP 35).

KJ-Park asks JLL to produce "all communications" with Match relating to the office space at 116 New Montgomery Street in San Francisco, Match's decision to lease alternative space in San Francisco in 2019, and the process for finding alternative space in San Francisco in 2019 (RFPs 17-19).

KJ-Park says that these document requests seek information relevant to its breach of contract claims and to Match's affirmative defenses of unilateral and mutual mistake.  Dkt. No. 77 at 2-4.  Match and JLL refuse to produce responsive documents responsive, asserting that these requests seek to uncover Match's subjective motivations for terminating the lease and are therefore irrelevant.  *Id.* at 7-9.

## II.    LEGAL STANDARD

A party may obtain discovery of any non-privileged matter that is relevant to a claim or defense and that is "proportional to the needs of case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit."  Fed. R. Civ. P. 26(b)(1).  Information need not be admissible in evidence to be discoverable.  *Id.*

Federal Rule of Civil Procedure 45 governs discovery of non-parties by subpoena.  The scope of discovery through a Rule 45 subpoena is the same as the scope of discovery permitted

under Rule 26(b). *Beaver Cnty. Employers Ret. Fund v. Tile Shop Holdings, Inc.*, No. 3:16-mc-80062-JSC, 2016 WL 3162218, at *2 (N.D. Cal. June 7, 2016) (citing Fed. R. Civ. P. 45 advisory comm. note to 1970 amendment); Fed. R. Civ. P. 34(a).

## III. DISCUSSION

KJ-Park's principal argument is that the documents it seeks are relevant to Match's third affirmative defense, asserting "unilateral mistake," and fourth affirmative defense, asserting "mutual mistake." *See* Dkt. No. 2-3. In its answer, Match alleges that KJ-Park's breach of contract claims "are barred on the ground of [unilateral and/or mutual] mistake, because . . . Defendants were under the mistaken impression when they entered into the Lease that Defendants could use the entirety of the premises that were the subject of the Lease for offices." Dkt. No. 76 at 6-7. Match further alleges that it was unaware that "the City of Palo Alto took the position that the City's Retail Preservation Ordinance precluded Defendants from lawfully using the ground floor of the Premises for offices. Not only did the Lease expressly state that the premises would be used entirely for offices, but the Lease expressly prohibited the use of any portion of the premises for retail purposes." *Id.* at 7. Match also alleges that it would not have entered into the lease or the lease guarantee if it had known it could not lawfully use the entire premises exclusively as office space. *Id.* at 6, 7. KJ-Park argues that it is entitled to discover "information that contradicts Match's assertion that it made a mistake with regard to the parties' Lease." Dkt. No. 77 at 3.

Match and JLL respond that KJ-Park "fails to articulate how the . . . discovery has any logical bearing whatsoever on whether either party was mistaken on any fact or law related to the Retail Ordinance." *Id.* at 8. They argue that whether Match discussed alternative spaces with JLL or anyone else is irrelevant to KJ-Park's breach of contract claims. *Id.* at 8-9.

In this action, the parties dispute whether KJ-Park fulfilled its contractual obligation to deliver the premises in the required condition as of the date specified in the lease agreement, and whether Match was permitted to terminate the lease and properly did so pursuant to the lease terms. Match is correct that as a general matter its motive or intent in terminating the lease is not relevant for purposes of liability or damages for breach of contract. *See Applied Equip. Corp. v. Litton Saudi Arabia Ltd.*, 7 Cal. 4th 503, 516 (Cal. 1994) ("[T]he law generally does not

United States District Court
Northern District of California

1    distinguish between good and bad motives for breaching a contract."); *see also Alki Partners, LP*

2    *v. DB Fund Servs., LLC*, 4 Cal. App. 5th 574, 597 (Cal. Ct. App. 2016) ("A party's purported

3    motive to breach a contract is not relevant to the issue of whether there has been a breach.  If

4    failing to communicate with investors was not otherwise a breach of contract, there was no breach

5    even if [the contracting party's] failure to communicate with investors stemmed from a bad

6    motive, greed, or other self-interest.").  However, Match has chosen to assert affirmative defenses

7    of unilateral or mutual mistake.  The mistake in question is the belief (by Match and/or by both

8    parties) that no ordinance of the City of Palo Alto prevented use of the ground floor of the

9    premises as office space, and specifically that the City's Retail Preservation Ordinance did not

10    require that the ground floor be used for retail purposes.  Match contends that it would not have

11    entered into the lease or the guarantee but for this mistake.[1]

12         The Court agrees with KJ-Park that it is entitled to discovery of the bases for Match's

13    affirmative defenses of mistake, including the veracity of the allegations made in support of those

14    defenses.  But the requests at issue do not seek communications reflecting Match's awareness or

15    understanding of the City of Palo Alto's retail ordinance or its applicability to the premises, and it

16    is not clear how Match's efforts to lease alternative space in San Francisco in 2019 have any

17    bearing on whether either or both parties were mistaken about the retail ordinance at the time they

18    entered into the lease agreement or the guarantee.

19         KJ-Park's other arguments are not persuasive.  It argues that the document requests "relate

20    directly to the issue of whether [KJ-Park] performed under the Parties' lease and whether Match

21    breached the contract by terminating and refusing to take possession of the Premises."  Dkt. No.

22    77 at 3.  KJ-Park speculates that "[i]n its discussions regarding its decision to lease office space as

23    an alternative to the Premises, it is likely that Match and [its] brokers discussed the alleged defects

24    with the Premises while considering its other leasing options."  *Id.* at 4.  While KJ-Park may be

25    entitled to discovery of Match's communications regarding alleged defects in the premises, the

26

27    ---
      [1] Match does not state whether there was a mistake of fact, *see* Cal. Civ. Code § 1577, a mistake of
28    law, *see* Cal. Civ. Code § 1578, or both.  *See Harris v. Rudin, Richman & Appel*, 95 Cal. App. 4th
      1332, 1339 (Cal. Ct. App. 2002) (party may rescind a contract if consent was the result of a
      mistake of fact or law).

United States District Court
Northern District of California

1  requests at issue do not seek any such communications, but instead seek communications about a

2  different subject matter—Match's efforts to lease alternative space in San Francisco.

3        Additionally, KJ-Park argues that the document requests seek information relevant to the

4  credibility of Match's trial witnesses, on the theory that responsive documents may contain

5  information that "contradict[s] or cast[s] doubt on Match's witnesses' assertions that the Premises

6  was not delivered in the proper condition, or that the retail ordinance justified Match's termination

7  of the lease," and might reveal "efforts [Match] took to create pretextual grounds for terminating

8  the lease." *Id.* To the extent KJ-Park seeks information showing Match's bad motive or intent in

9  terminating the lease, this information is not relevant to its breach of contract claim. KJ-Park

10  suggests that it nevertheless should be permitted to obtain this discovery because it may reveal that

11  a witness was untruthful about the "real" reason for terminating the lease and may therefore lead

12  to the discovery of admissible evidence relating to the witness's credibility. KJ-Park cites no

13  authority for the proposition that a party may obtain discovery of irrelevant subject matter solely

14  for the purposes of developing evidence relating to credibility. The case on which KJ-Park relies,

15  *United States v. Hankey*, 203 F.3d 1160 (9th Cir. 2000), concludes that evidence of a witness's

16  bias and motivation to lie in support of a fellow gang member is admissible to impeach the

17  witness's trial testimony. 203 F.3d at 1171. *Hankey* does not stand for the proposition that a party

18  may obtain discovery of otherwise irrelevant subject matter in the hopes of demonstrating that a

19  witness has been untruthful about that matter, or that such evidence of untruthfulness would be

20  admissible at trial; *Hankey* concerns the admissibility at trial of evidence of bias or coercion

21  bearing on a witness's credibility. *See, e.g.*, *United States v. Ray,* 731 F.2d 1361, 1364 (9th Cir.

22  1984) (distinguishing between bias and untruthfulness); *Rackley v. Anderson*, No. 04-cv-141-

23  BLG-RFC, 2006 WL 8435694, at *2 (D. Mont. June 26, 2006) (distinguishing between bias and

24  irrelevant subject matter having no bearing on witness credibility). KJ-Park's document requests

25  are not directed to evidence of bias or coercion.

26  **IV.  CONCLUSION**

27        Because KJ-Park has not shown that the documents it seeks are relevant to any claim or

28

1    defense, the Court sustains Match's and JLL's objections on those grounds.

2        **IT IS SO ORDERED.**

3    Dated: April 17, 2024

4

5

6                                        Virginia K. DeMarchi
                                         United States Magistrate Judge

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28