UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| KJ-PARK, LLC,<br><br>        Plaintiff,<br><br>    v.<br><br>MATCH GROUP, LLC, et al.,<br><br>        Defendants. | Case No.  23-cv-02346-VKD<br><br>**ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION FOR ATTORNEYS' FEES AND COSTS**<br><br>Re: Dkt. No. 134 |

Defendants Match Group, LLC and Match Group, Inc. (collectively "Match Group") move for an award of attorneys' fees and non-taxable costs,[1] as well as prejudgment and post-judgment interest on any such award. Dkt. Nos. 134, 139. Plaintiff KJ-Park, LLC ("KJ-Park") opposes the motion in part. Dkt. Nos. 136, 141. Upon consideration of the moving and responding papers, as well as the oral arguments presented, the Court grants in part and denies in part Match Group's motion for attorneys' fees, grants as unopposed Match Group's request for its non-taxable costs and post-judgment interest, and denies Match Group's request for prejudgment interest.

**I.  BACKGROUND**

This federal diversity action arises out of a dispute regarding a commercial lease agreement for a building located at 2555 Park Boulevard in the City of Palo Alto, California. KJ-Park claimed that Match Group breached the lease agreement and a guaranty, and owed KJ-Park at least $6,986,605 in damages, plus additional unpaid rent. *See* Dkt. No. 72. Match Group, LLC

---

[1] As noted in Match Group's motion, and as confirmed at the motion hearing, Match Group seeks its non-taxable costs in the present motion, and has separately filed a bill of costs with respect to Match Group's taxable costs. *See* Dkt. No. 134 at ECF 8 n.1; *see also* Dkt. Nos. 135, 145, 148.

1  counterclaimed for breach of contract and for monies had and received. Dkt. No. 76. The key

2  disputed issue was whether Match Group properly terminated the lease agreement.

3  On September 3, 2024, the Court granted in part and denied in part Match Group's

4  summary judgment motion, and granted in part and denied in part KJ-Park's motion for partial

5  summary judgment. Dkt. No. 124. Pursuant to Rule 58, the Court subsequently entered the

6  parties' proposed judgment directing KJ-Park to pay Match Group, LLC $289,693.74 on Match

7  Group, LLC's counterclaim, plus prejudgment interest on that sum, as well as post-judgment

8  interest "on the total judgment recovered[.]" Dkt. No. 133.

9  Match Group now moves for an award of its attorneys' fees in the amount of

10  $1,016,957.92, plus $93,550.03 in non-taxable costs, as well as pre- and post-judgment interest on

11  the total award of fees and costs. *See* Dkt. No. 134 at ECF 8; Dkt. No. 134-12; Dkt. No. 139 at

12  ECF 12. Match Group argues that the requested award of fees and costs is both reasonable and

13  authorized by the subject lease agreement. KJ-Park does not oppose Match Group's request for

14  costs or post-judgment interest. However, KJ-Park argues that Match Group's requested fees are

15  unreasonable, and that there is no basis to award prejudgment interest on any amount of fees or

16  costs.

17  **II.     DISCUSSION**

18      **A.     Attorneys' Fees**

19  Because the Court exercises diversity jurisdiction in this matter, and as the parties' lease is

20  governed by California law, the Court applies California law in interpreting the lease's

21  "Attorneys' Fees" provision. *See Lafarge Conseils et Etudes, S.A. v. Kaiser Cement & Gypsym*

22  *Corp.*, 791 F.2d 1334, 1341 (9th Cir. 1986) (for contracts governed by California law, courts "look

23  to California law, specifically Cal. Civ. Code section 1717, in interpreting the attorney fee

24  provision."); *see also Mangold v. Cal. Pub. Utilities Comm'n*, 67 F.3d 1470, 1478 (9th Cir. 1995)

25  (in diversity actions, state law determines both "the right to fees" and "the method of calculating

26  the fees."). California Civil Code section 1717 provides the rule of decision, and states in relevant

27  part:

28

> In any action on a contract, where the contract specifically provides that attorney's fees and costs, which are incurred to enforce that contract, shall be awarded . . . to the prevailing party, then the party who is determined to be the party prevailing on the contract . . . shall be entitled to reasonable attorney's fees in addition to other costs.
>
> . . .
>
> Reasonable attorney's fees shall be fixed by the court, and shall be an element of the costs of suit.

Cal. Civ. Code § 1717(a). Thus, to recover attorneys' fees under section 1717, a party must show that the contract authorizes such fees, the party is the prevailing party, and the attorneys' fees are reasonable. *Id*. The purpose of section 1717 is "to establish uniform treatment of fee recoveries in actions on contracts containing attorney fee provisions and to eliminate distinctions based on whether recovery was authorized by statute or by contract." *PLCM Group v. Drexler*, 22 Cal. 4th 1084, 1091 (2000) (quotations and citation omitted). "Consistent with that purpose," courts have "broad authority to determine the amount of a reasonable fee." *Id*. at 1095.

In calculating attorneys' fees authorized by contract under California law, courts apply the "lodestar" method, i.e. "the number of hours reasonably expended multiplied by the reasonable hourly rate." *Id*.; *see also Cataphora, Inc v. Parker*, 848 F. Supp. 2d 1064, 1069 (N.D. Cal. 2012) (same). After calculating the lodestar, courts must "consider whether the total award so calculated under all of the circumstances of the case is more than a reasonable amount and, if so, shall reduce the section 1717 award so that it is a reasonable figure." *PLCM Group*, 22 Cal. 4th at 1095-96. It is well established that the determination of what constitutes reasonable attorneys' fees is committed to the discretion of the court. *Id*. at 1096.

### 1. Contractual Fees Provision

There is no dispute that the parties' lease agreement authorizes an award of attorneys' fees. The lease's fees provision states:

> 29.21 **Attorneys' Fees**. In the event that either Landlord or Tenant should bring suit for the possession of the Premises, for the recovery of any sum due under this Lease, or because of the breach of any provision of this Lease or for any other relief against the other, then all costs and expenses, including reasonable attorneys' fees, incurred by the prevailing party therein shall be paid by the other party, which obligation on the part of the other party shall be deemed to

>have accrued on the date of the commencement of such action and shall be enforceable whether or not the action is prosecuted to judgment.

Dkt. No. 97-2 at ECF 42.  KJ-Park does not contest that Match Group is the prevailing party.  *See* Cal. Civ. Code § 1717(b)(1) (generally, "the party prevailing on the contract shall be the party who recovered a greater relief in the action on the contract.").  However, KJ-Park proposes several significant reductions to the fee award, arguing that Match Group has not shown that its attorneys' rates and hours are reasonable, or that Match Group is entitled to prejudgment interest on any fees and costs that are awarded.

### 2.  Reasonableness of Rates

Match Group seeks an award of fees based on the work of two law firms that represented it in this action:  Fennemore Wendel ("Fennemore") and Foley & Lardner LLP ("Foley"). Fennemore appeared as Match Group's counsel of record upon the removal of this action from the state court in May 2023.  *See* Dkt. No. 1; *see also* Dkt. No. 34.  In August 2023, Foley entered its appearance on behalf of Match Group.  *See* Dkt. Nos. 40, 41; *see also* Dkt. Nos. 54, 57 (subsequent Foley attorney appearances in December 2023 and January 2024).  Although Foley did not replace Fennemore as Match Group's counsel of record, the docket reflects that Foley took the active role in defending the litigation, including appearing at hearings and conferences, conducting discovery, and filing motions and other papers.

In support of Match Group's motion, Mark Epstein submitted a declaration in which he states that he is a Fennemore director and litigation attorney with more than 24 years of experience in real estate, business, lending, and title insurance coverage litigation.  Dkt. No. 134-11 ¶ 2 & Ex. A.  Mr. Epstein billed for his services at a rate of $670/hour.  *Id.*  He further states that Michele Kirrane is a Fennemore director and litigation attorney who billed for her services at a rate of $540/hour.  *Id.* ¶ 3.  According to biographical information appended to Mr. Epstein's declaration, Ms. Kirrane focuses on business litigation and is "well-versed in real estate property issues," including commercial lease disputes.  *Id.*, Ex. B.

Mr. Epstein submitted Fennemore's billing records indicating that other Fennemore timekeepers worked on the matter, but the identity of those other timekeepers and their respective

4

qualifications are not addressed anywhere in Mr. Epstein's declaration or in Match Group's opening motion. Nor did Match Group expressly identify these timekeepers' hourly rates. *See generally* Dkt. No. 134. The Court has deduced their respective rates from Fennemore's billing records, and Match Group subsequently identified the additional Fennemore timekeepers in its reply. Together with the billing records submitted by Mr. Epstein, Match Group's reply evidence indicates that Kurt Franklin is a Fennemore director and litigation attorney who specializes in "complex, multi-party, class action, and civil rights and impact-litigation defense cases" and billed at a rate of $760/hour. Dkt. No. 134-11, Ex. C; Dkt. No. 139-1 ¶ 10 & Ex. 2. Miguel Saldaña is a former Fennemore litigation associate with experience in real estate and other matters whose services were billed at $490/hour. Dkt. No. 134-11, Ex. C; Dkt. No. 139-1 ¶ 13 & Ex. 5. Jordan Smith and Michelle Sanchez are Fennemore litigation paralegals, whose services were billed at $290/hour and $310/hour, respectively. *See* Dkt. No. 134-11, Ex. C; Dkt. No. 139-1 ¶¶ 11-12 & Exs. 3-4.

Eileen Ridley is a Foley partner whose experience includes "complex commercial matters for a variety of industries including the high-tech, oil and gas, telecommunications, construction, insurance, and health care industries." Dkt. No. 134-1 ¶ 3 & Ex. A. Her services were billed at a rate of $875/hour (from August 2023 to January 2024) and at a rate of $975/hour as of February 2024. *See* Dkt. No. 134-1 ¶¶ 3, 13. Robert Slovak is a Foley partner with over 20 years of experience in "high-stakes commercial cases," including "business divorces" in "private equity, family office, energy, multi-level marketing, financial and banking, cryptocurrency, construction, and oil and gas" industries. *Id.* ¶ 4 & Ex. B. Mr. Slovak's services were billed at a rate of $750/hour (from September 2023 to January 2024) and at a rate of $825/hour (as of February 2024). Dkt. No. 134-1 ¶¶ 4, 13. Alan Ouellette is senior counsel at Foley with about 14 years of experience, whose practice focuses on "complex business disputes and litigation with significant, and potentially catastrophic, exposure, including class actions, Judicial Council Coordination Proceedings (JCCPs), and mass tort actions." *Id.* ¶¶ 5, 13 & Ex. C. Mr. Ouellette's services were billed at a rate of $750/hour (from December 2023 to January 2024) and at a rate of $800/hour (as of February 2024). Dkt. No. 134-1 ¶ 13. Evan Hamling is a Foley litigation associate with about

1    three years of experience, whose services were billed at a rate of $470/hour (from October 2023 to
2    January 2024) and at a rate of $570/hour (as of February 2024). Dkt. No. 134-1 ¶¶ 6, 13 & Ex. D.
3    Other Foley timekeepers include: Jennifer Huckleberry, a former Foley litigation associate with
4    several years of experience in securities and commercial litigation, whose services were billed at a
5    rate of $505/hour. *See* Dkt. No. 134-1 ¶¶ 7, 13. Match Group provided additional background
6    information regarding Ms. Huckleberry in its reply papers. *See* Dkt. No. 139-1 ¶ 2 & Ex. 1. In its
7    opening motion, Match Group also identified the following members of its litigation support staff,
8    and provided background information regarding those individuals in its reply papers: Wendy
9    Delvalle, is a Foley paralegal with about 28 years of experience, whose services were billed at a
10   rate of $375/hour (from December 2023 to January 2024) and at a rate of $395 (as of February
11   2024); Tanya Durham is a Foley paralegal with about 13 years of experience, whose services were
12   billed at a rate of $300/hour (from September 2023 to January 2024) and at a rate of $330/hour (as
13   of February 2024); Carlos Freitas, is a Foley paralegal with about 19 years of experience, whose
14   services were billed at a rate of $385/hour; Jesus Torres is a Foley paralegal with about 13 years of
15   experience, whose services were billed at a rate of $325/hour (in January 2024) and at a rate of
16   $350/hour (as of February 2024); and Noel Velasco is a Foley project manager/litigation support
17   staff member, whose services were billed at a rate of $470/hour. Dkt. No. 134-1 ¶¶ 7, 8, 13; Dkt.
18   No. 139-1 ¶¶ 2-6. While Ms. Ridley attests that "[s]ome of the rates charged" for Foley's work in
19   this action were discounted "in light of the Firm's practice of discounting certain rates for certain
20   clients," (*see* Dkt. No. 134-1 ¶ 10), she does not specify which rates were discounted or by how
21   much.

22   KJ-Park argues that the Court should exclude all fees for work performed by Fennemore
23   timekeepers Kurt Franklin, Miguel Saldaña, Jordan Smith, and Michelle Sanchez, as well as Foley
24   timekeepers Jennifer Huckleberry, Wendy Delvalle, Tanya Durham, Jesus Torres, Carlos Freitas,
25   and Noel Velasco. As noted, Match Group's opening motion did not identify or describe the
26   qualifications of the Fennemore timekeepers other than Mr. Epstein and Ms. Kirrane. KJ-Park
27   argues that Match Group also failed to present sufficient biographical information supporting the
28   hourly rates for Foley associate Ms. Huckleberry or for Foley's paralegal and litigation support

staff. Although Match Group subsequently submitted information about these Fennemore and Foley timekeepers through a declaration by Ms. Ridley in its reply papers (*see* Dkt. No. 139-1), KJ-Park argues that this submission was not timely and should not be considered. Additionally, KJ-Park argues that Foley's counsel lacks the personal knowledge necessary to provide a proper foundation for the biographical information of Fennemore's staff. *See* Dkt. No. 141. Finally, KJ-Park maintains that the rates charged by most of Match Group's attorneys are excessive and should be reduced.

The Court agrees with KJ-Park that Match Group should have submitted evidence about all of the Fennemore and Foley timekeepers for whom it seeks fees in its opening papers, and that the Court has discretion to disregard the additional evidence Match Group submitted for the first time in its reply. However, as explained below, the Court will not entirely disregard Match Group's late evidence, but will instead consider it in the context of KJ-Park's other objections and critiques of Match Group's fees request.

"The reasonable hourly rate is that prevailing in the community for similar work." *PLCM Group*, 22 Cal. 4th at 1095; *see also Ketchum v. Moses*, 24 Cal. 4th 1122, 1133 (2001) (remarking that "the reasonable value of attorney services is variously defined as the hourly amount to which attorneys of like skill in the area would typically be entitled.") (quotations and citation omitted); *Syers Props. III, Inc. v. Rankin*, 226 Cal. App. 4th 691, 699 (2014) ("The determination of the 'market rate' is generally based on the rates prevalent in the community where the court is located.") (citation omitted). Generally, courts "will look to equally difficult or complex types of litigation to determine which market rates to apply." *Syers Props. III, Inc.*, 226 Cal. App. 4th at 699 (quotations and citation omitted). "The value of legal services performed in a case is a matter in which the trial court has its own expertise." *PLCM Group*, 22 Cal. 4th at 1096. The court "may make its own determination of the value of the services contrary to, or without the necessity for, expert testimony," and "makes its determination after consideration of a number of factors, including the nature of the litigation, its difficulty, the amount involved, the skill required in its handling, the skill employed, the attention given, the success or failure, and other circumstances in the case." *Id*. The fee applicant has the burden of producing evidence, other than declarations of

7

1  interested counsel, that the requested rates are in line with those prevailing in the community for
2  similar services by lawyers of reasonably comparable skill, experience and reputation.  *Blum v.*
3  *Stenson*, 465 U.S. at 896, 895 n.11 (1984); *see also United Steelworkers of Am. v. Phelps Dodge*
4  *Co.*, 896 F2d 403, 407 (9th Cir. 1990) ("Affidavits of the plaintiffs' attorney and other attorneys
5  regarding prevailing fees in the community, and rate determinations in other cases, particularly
6  those setting a rate for the plaintiffs' attorney, are satisfactory evidence of the prevailing market
7  rate.").

8  Based on their respective arguments, the parties appear to agree that the relevant
9  community for the determination of a reasonable rate in this case is Northern California or, more
10 specifically, the Bay Area.  KJ-Park does not challenge the reasonableness of the rates billed by
11 Fennemore attorneys Mr. Epstein ($670/hour) and Ms. Kirrane ($540/hour), as those rates are
12 generally in line with the rates that KJ-Park's own attorneys charged for their work in this case.
13 *See* Dkt. No. 136-1 ¶¶ 5-6.  However, KJ-Park contends that higher rates charged by several of
14 Match Group's other attorneys—namely, Fennemore attorney Mr. Franklin ($760/hour), and
15 Foley attorneys Ms. Ridley ($875/$975 per hour), Mr. Slovak ($750/$825 per hour), Mr. Ouellete
16 ($750/$800 per hour), and Mr. Hamling ($570/hour)[2]—are excessive for a "landlord-tenant" case.
17 *See* Dkt. No. 136 at ECF 8.  Match Group responds that this litigation was "a complicated case"
18 and that the reasonableness of the rates charged by its attorneys is amply supported by the record.
19 *See* Dkt. No. 134 at ECF 12-16.

20 The Court agrees with KJ-Park that Match Group has not met its burden to demonstrate
21 that its requested rates for several of its attorneys or its staff are comparable to those prevailing in
22 the community for similar work.  First, while the present commercial lease action involved some
23 complexities not present in other landlord-tenant disputes over unpaid rent, this case was not
24 particularly complex; indeed, Match Group repeatedly characterized both the law and the lease
25 agreement, on which resolution of this dispute turned, as "clear."  *See* Dkt. Nos. 97, 113, 106.
26 Second, the declarations of Match Group's counsel are conclusory regarding the

---

[2] KJ-Park does not appear to take issue with the $470/hour rate charged for Mr. Hamling's services performed prior to February 1, 2024.  *See* Dkt. No. 136 at ECF 8.

8

reasonableness of the respective rates charged. Ms. Ridley asserts in her declaration that Foley's rates "are based on extensive review and surveys of both the Northern California legal and national market and are consistent with the rates charged by other firms in Northern California for attorneys with similar levels of experience and expertise." Dkt. No. 134-1 ¶ 10. She further states that Foley's rates charged in this case are "generally less than or equal to the rates charged by similar firms for lawyers of equivalent experience and expertise." *See id*. ¶ 11. In his declaration, Mr. Epstein makes these identical statements in support of the notably lower rates charged by Fennemore for his services and those of Ms. Kirrane. *See* Dkt. No. 134-11 ¶¶ 5, 6. Ms. Ridley and Mr. Epstein do not provide details about what "similar firms" or "lawyers of equivalent experience and expertise" means or what those similar firms and lawyers charge. Moreover, while the fact that Foley discounted some rates for this litigation can be a relevant consideration, the record is vague as to which rates were discounted and by what amount. *See* Dkt. No. 134-1 ¶ 10.

In any event, a law firm's own billing rates are not the only factor considered. While Ms. Ridley submits a 2017 National Law Journal Billing Survey (which Mr. Epstein also references on information and belief), that survey is not informative, as it is seven years old, provides ranges and averages for partners and for associates without identifying years of experience, and does not indicate any rates actually awarded in this District in comparable litigation. *See* Dkt. No. 134-1 ¶ 7 & Ex. E; *see also* Dkt. No. 134-11 ¶ 7. Mr. Epstein and Ms. Ridley do not otherwise provide examples of any rates besides those charged by Fennemore or Foley, or of any comparable awards in this District or the Bay Area. Indeed, no one has cited cases demonstrating that the rates charged by Match Group's counsel are comparable to those charged by attorneys of similar skill in equally difficult or complex types of litigation in this community. Match Group's cited cases, which are decades old or concern rates in different types of litigation and in different federal districts, are not informative. *See* Dkt. No. 134 at ECF 15-16.

The only other evidence of rates charged for similar work is the declaration of KJ-Park's counsel, Maria Bellafronto. Ms. Bellafronto attests that she has been practicing law for 24 years, with "significant experience in handling landlord-tenant disputes," and bills for her work at a rate of $650/hour. Dkt. No. 136-1 ¶ 5. She further states that two associate attorneys with experience

9

in real estate and commercial lease matters—one of whom has been practicing law for about five years, and the other for about 19 years—each billed for their services in this case at $550/hour. *See id*. ¶ 6. Ms. Bellafronto specifically avers based on her experience that the rates charged for her work and that of her associates in this case "are within the normal and customary rates for real estate attorneys in the Bay Area," and that "[i]t is not normal or customary for an attorney in the Bay Area to charge $950 per hour [in] a commercial landlord-tenant dispute." *Id*. ¶ 6. KJ-Park argues that the rates charged by Ms. Ridley and Messrs. Franklin, Slovak, Ouellette, and Hamling may be customary for intellectual property and other complex litigation matters, but are not reasonable for the present litigation. *See* Dkt. No. 136 at ECF 8; Dkt. No. 134-1 ¶¶ 3-5 & Exs. A-C; Dkt. No. 139-1 ¶ 10 & Ex. 2.

While the rates requested for Ms. Ridley and Messrs. Franklin, Slovak, and Ouellette may prove reasonable in other contexts if properly supported by competent evidence, Match Group has not established that they are reasonable in this case, and the Court will reduce the rates for those attorneys for lack of sufficient evidentiary showing. The $670 hourly rate charged by Mr. Epstein appears to be within a reasonable range for this case, as it is commensurate with the one charged by Ms. Bellafronto, and Mr. Epstein and Ms. Bellafronto appear to have similar levels of experience in real estate/commercial lease litigation. *See* Dkt. No. 134-11; Dkt. No. 136-1. As noted, Ms. Ridley and Messrs. Franklin, Slovak, and Ouellette appear to focus on large, complex litigation matters that differ from this action, and their skills and experience likewise differ from those of the other attorneys who worked on this case. However, the Court notes that both firms appear to have exercised billing discretion in writing off or writing down the fees actually billed to Match Group. *See generally* Dkt. No. 134-1 ¶ 14, Ex. F; Dkt. No. 134-11 ¶ 9, Ex. C. In view of the nature of this litigation, its relative lack of complexity, and the kind of work reasonably required to litigate the matter through summary judgment, and the firms' exercise of billing discretion, the Court finds that the rates for Ms. Ridley, Mr. Franklin, and Mr. Slovak reasonably should be reduced to $700/hour, and the rate for Mr. Ouellette should be reduced to $600/hour. The Court declines to reduce the $570/hour rate charged for Mr. Hamling's services on and after February 1, 2024, as that rate is reasonably commensurate with the range of rates charged for work

10

by other associate attorneys, and in view of Foley's exercise of billing discretion with respect to Mr. Hamling's time.

With respect to Fennemore's paralegal/litigation support staff, the Court sustains KJ-Park's objection to Ms. Ridley's reply declaration and evidence (Dkt. No. 139-1 ¶¶ 11-12 & Exs. 3, 4). Fed. R. Evid. 602, 901. Match Group has not provided a proper foundation for Ms. Ridley's testimony on this point. Accordingly, fees for work performed by Jordan Smith (3.8 hours x $290/hour = $1,102) and Michelle Sanchez (0.4 hours x $310/hour = $124) will be excluded from the fees award, for a total deduction of $1,226.

With respect to Foley's paralegal/litigation support staff, the requested rates appear to be at the high end of rates awarded in this District. *See generally, e.g., In re GEIO Gen'l Ins. Co.*, No. 19-cv-03768-HSG, 2023 WL 2530931, at *9 (N.D. Cal. Mar. 15, 2023) (noting approval of paralegal rates up to $490/hour in complex class actions). As most of the paralegal timekeepers appear to have substantial experience (over a decade of experience, and in some instances, nearly two or three decades of experience), the Court will not reduce the requested fees for work by Ms. Delvalle, Ms. Durham, Mr. Torres, or Mr. Freitas. However, as there is minimal information provided about Noel Velasco, and insufficient justification for the $470 hourly rate charged, the Court will exclude the requested fees of $508.62.

### 3. Reasonableness of Hours

#### a. Overstaffing

KJ-Park argues that Match Group overstaffed this case, warranting a 10% across-the-board reduction in Match Group's requested fees. Additionally, KJ-Park argues that it should not have to pay for fees incurred by multiple attorneys at depositions, asserting that several depositions were attended by two Foley attorneys, in addition to Match Group's in-house counsel. Match Group says that most of the work in this litigation was conducted by three Foley attorneys (and their support staff), and argues that the fact that multiple timekeepers appear on the billing records does not mean its requested fees are unreasonable.

Submitted billing records show that Match Group was represented in this action by nine attorneys and seven paralegals and support staff at the Fennemore and Foley firms. *See* Dkt. No.

134-1 ¶¶ 13, 14 & Ex. F; Dkt. No. 134-11 ¶ 9 & Ex. C.  While this litigation reasonably required work by multiple attorneys, Match Group has not demonstrated that the law or evidence was so complex as to require the work of multiple experienced litigation attorneys from two national law firms.  At the motion hearing, Match Group argued that Fennemore necessarily incurred fees to facilitate the transition of the case to Foley, and thereafter remained as counsel of record in an "advisory capacity."  *See* Dkt. No. 145.  The Fennemore and Foley billing records indicate that from about mid-August 2023 (when Foley first appeared as counsel of record) through the October 2023 settlement conference with Judge Kim, there necessarily was some transition work and shared labor by both firms regarding case management matters, preparation of responsive pleadings, discovery planning, and preparation for the upcoming settlement conference.  *See* Dkt. No. 134-1 ¶ 14 & Ex. F; Dkt. No. 134-11 ¶ 9 & Ex. C.  However, as noted by Match Group at the motion hearing, those same records show a "clear temporal break," which the Court finds occurred as of November 2023, when billing records demonstrate that Foley assumed primary responsibility for the defense of this matter, while Fennemore (i.e., Mr. Epstein) incurred fees principally in attending status conferences with Match Group and the Foley attorneys and reviewing filings and documents prepared by others.  *See* Dkt. No. 134-1 ¶ 14 & Ex. F; Dkt. No. 134-11 ¶ 9 & Ex. C.  Match Group does not identify any unique skills or services provided by Mr. Epstein that required the continued work of both firms throughout the litigation.  Moreover, the records reflect some unnecessary duplication of labor in November 2023 when Mr. Epstein billed $1,005.00 for 1.5 hours for preparing a draft stipulated protective order (which apparently was not filed), while Foley attorneys also spent time preparing a protective order, and the parties ultimately filed a stipulated protective order based on this District's form protective order for standard litigation.  *See* Dkt. No. 60.  On this record, the Court finds that a reduction in Match Group's requested fees is warranted.  The Court will not permit recovery of fees for work performed by Mr. Epstein from November 1, 2023 forward, for a total deduction of $7,414.

With respect to KJ-Park's argument that Match Group also overstaffed depositions with multiple attorneys, the Foley billing records demonstrate that Match Group is seeking fees for only one attorney's time to attend each deposition, with one exception.  That one exception is the

1  deposition of Mr. Lait, as to which Match Group seeks fees incurred by Ms. Ridley and Mr.
2  Ouellette, each of whom billed half their time to account for the attendance of more than one
3  Foley lawyer. *See* Dkt. No. 134-1 ¶ 14, Ex. F at ECF 21, 22. For this reason, the Court declines
4  to deduct any fees with respect to the alleged overstaffing at depositions.

### b. Match Group's Motion to Dismiss

KJ-Park argues that Match Group's counsel spent an unreasonable number of hours on Match Group's Rule 12(b)(6) motion to dismiss.[3] Mr. Epstein's declaration and the appended Fennemore billing records indicate that the work on the motion to dismiss was done by two attorneys, Mr. Epstein and associate attorney Miguel Saldaña. Dkt. No. 134-11 ¶ 9 & Ex. C. The billing records indicate that Mr. Epstein billed 74.5 hours on the motion, while Mr. Saldaña billed 55.2 hours. *Id.*; *see also* Dkt. No. 136-1 ¶ 11 & Ex.C. KJ-Park argues that the resulting fees of over $75,000 for the motion to dismiss are excessive and should be reduced by 50%. *See* Dkt. No. 136 at ECF 14.

The Court will not deduct any fees for time that Fennemore counsel spent preparing for and attending the hearing on Match Group's motion to dismiss, or for time that Mr. Epstein spent communicating with Match Group about the motion. Based on its review of Fennemore's billing records, the Court finds that the fees incurred for those activities are reasonable.

While Match Group maintains that the time spent briefing the motion to dismiss was reasonable in view of the issues raised in the parties' respective summary judgment motions (*see* Dkt. No. 139 at ECF 11-12), Match Group's Rule 12(b)(6) motion papers were briefed as if it were a dispositive motion on the merits, rather than a challenge to the pleadings. The pleading issues raised in that motion were not complex and did not call for the excessive hours that two Fennemore attorneys spent researching and drafting it, including 4.7 hours that Mr. Epstein spent on June 28, 2023 preparing a proposed order that apparently was not filed. Accordingly, the Court

---

[3] Although KJ-Park also asserts that Match Group's motion to dismiss was "completely misguided" (*see* Dkt. No. 136 at ECF 13), the Court does not understand KJ-Park to argue that Match Group's requested fees should be reduced on that basis. In any event, as discussed below, the Court does not adopt KJ-Park's views regarding the merits of Match Group's motion to dismiss as a basis to reduce the requested fees in this case.

1  will apply a 20% reduction to the 68.9 hours for Mr. Epstein's work and the 54.4 hours for Mr.
2  Saldaña's work briefing Match Group's motion to dismiss, for a total deduction of $14,563.80.

### c.   Unsuccessful Discovery Arguments

KJ-Park argues that Match Group should not be awarded fees incurred in litigating a discovery dispute about whether Match Group waived the attorney-client privilege and work product doctrine regarding certain information. *See* Dkt. No. 136 at ECF 14. Although the Court found Match Group's initial privilege log entirely inadequate and its arguments regarding non-waiver unsupported (*see* Dkt. Nos. 62, 86), the Court cannot say that Match Group's discovery arguments were frivolous. *See, e.g., Thermolife Int'l, LLC v. Myogenix Corp.*, No. 13-cv-651 JLS (MDD), 2018 WL 325025, at *7 (S.D. Cal. Jan. 8, 2018) (declining to deduct fees for motions that were "not meritless."); *Alzheimer's Inst. of Am. v. Eli Lilly & Co.*, No. 10-cv-00482-EDL, 2016 WL 7732621, at *7 (N.D. Cal. Apr. 14, 2016) ("[R]ecovery of attorneys' fees is not strictly limited to time spent on winning arguments, but rather includes time spent reasonably by the prevailing party."). Accordingly, the Court will not deduct fees for time that Match Group's counsel spent litigating those discovery disputes.

### B.   Prejudgment Interest

Match Group argues that the lease's fees provision authorizes an award of prejudgment interest on any award of fees and costs, and provides that such interest accrues from the date KJ-Park filed suit, March 23, 2023. *See* Dkt. No. 134 at ECF 20-21; Dkt. No. 139 at ECF 13-17. KJ-Park argues that Match Group's requested fees and costs are not the kind of sum for which prejudgment interest can or should be awarded under California law. KJ-Park also argues that Match Group's request for prejudgment interest, accruing on March 23, 2023, would result in a windfall to Match Group, as billing records show that Match Group's attorneys did not incur any fees until April 13, 2023. *See* Dkt. No. 136 at 9-14; Dkt. No. 134-11 ¶ 9 & Ex. C.

California law governs prejudgment interest. *See U.S. Fidelity & Guaranty Co. v. Lee Investments, LLC*, 641 F.3d 1126, 1139 (9th Cir. 2011) ("Prejudgment interest in a diversity action is a substantive matter governed by state law.") (cleaned up; quotations and citation omitted); *Mutuelles Unies v. Kroll & Linstrom*, 957 F.2d 707, 714 (9th Cir. 1992) ("In diversity jurisdiction,

1  state law governs all awards of pre-judgment interest.").

2  Although its briefing is somewhat muddled as to the claimed source of KJ-Park's
3  obligation to pay prejudgment interest, at the motion hearing Match Group confirmed that it
4  contends that the source of that obligation is the lease's fees provision itself. As discussed, that
5  fees provision provides, in relevant part, that "all costs and expenses, including reasonable
6  attorneys' fees, incurred by the prevailing party therein shall be paid by the other party, which
7  obligation on the part of the other party shall be deemed to have accrued on the date of the
8  commencement of such action . . . ." Dkt. No. 97-2 at ECF 42 (section 29.21). Match Group
9  argues that this language evidences a contractual intent for KJ-Park to fully compensate Match
10 Group for all of Match Group's "costs and expenses, including reasonable attorneys' fees"—and
11 prejudgment interest—accruing from March 23, 2023 when KJ-Park filed the present litigation.

12 Match Group's interpretation of the lease's fees provision is not plausible. The fees
13 provision simply indicates that the party who did not prevail will be obligated to pay the
14 prevailing party's costs and expenses as of the date an action is commenced. Unlike cases on
15 which Match Group relies, nothing in the fees provision expressly provides for prejudgment
16 interest, much less any such interest accruing weeks before Match Group acknowledges that it first
17 incurred any attorneys' fees. *Cf. Roodenburg v. Pavestone Co., L.P.*, 171 Cal. App. 4th 185, 191
18 (2009) (awarding prejudgment interest where parties' agreement expressly provided for the same).

19 As Match Group has not persuasively demonstrated that the lease's fees provision
20 authorizes prejudgment interest, it seems that Match Group must rely on California law to
21 establish its claim for prejudgment interest. California Civil Code section 3287 provides, in
22 relevant part:

> (a) A person who is entitled to recover damages certain, or capable of being made certain by calculation, and the right to recover which is vested in the person upon a particular day, is entitled also to recover interest thereon from that day, except when the debtor is prevented by law, or by the act of the creditor from paying the debt. This section is applicable to recovery of damages and interest from any debtor, including the state or any county, city, city and county, municipal corporation, public district, public agency, or any political subdivision of the state.
>
> (b) Every person who is entitled under any judgment to receive

> damages based upon a cause of action in contract where the claim was unliquidated, may also recover interest thereon from a date prior to the entry of judgment as the court may, in its discretion, fix, but in no event earlier than the date the action was filed.

Cal. Civ. Code § 3287(a), (b). "Section 3827(a) mandates prejudgment interest on liquidated claims—claims where damages that are 'certain, or capable of being made certain by calculation.'" *Workplace Techs. Research, Inc. v. Project Mgmt. Inst., Inc.*, 664 F. Supp. 3d 1142, 1155 (S.D. Cal. 2023) (quoting *N. Oakland Med. Clinic v. Rogers*, 65 Cal. App. 4th 824, 828 (1998)). "In contrast, section 3287(b) makes discretionary prejudgment interest on unliquidated claims—claims where the exact amount of damage is in dispute.'" *Id.*; *see also N. Oakland Med. Clinic*, 65 Cal. App. 4th at 829 (same).

### 1.      Section 3287(a)

KJ-Park contends that Match Group is not entitled to a mandatory award of prejudgment interest under section 3287(a) because the amount of Match Group's requested fees and costs are not sums that were "certain" or "capable of being made certain by calculation." "Damages are deemed certain or capable of being made certain within the provisions of subdivision (a) of section 3287 where there is essentially no dispute between the parties concerning the basis of computation of damages if any are recoverable but where their dispute centers on the issue of liability giving rise to damage." *Zagarian v. BMW of N. Am., Inc.*, 442 F. Supp. 3d 1216, 1224 (C.D. Cal. 2020) (citing *Duale v. Mercedes-Benz USA, LLC*, 148 Cal. App. 4th 718, 729 (2007)). "Put simply, '[w]here the amount of damages cannot be resolved except by verdict or judgment, prejudgment interest is not appropriate.'" *Id.* (quoting *Duale*, 148 Cal. App. 4th at 729); *see also Fresno Rock Taco, LLC v. Nat'l Sur. Ins. Co.*, No. 1:11-cv-845-SKO, 2015 WL 135720, at *24 (E.D. Cal. Jan. 9, 2015) ("'The test for recovery of prejudgment interest under [Section 3287(a) ] is whether [the judgment debtor] (1) actually knows the amount of damages owed to [the judgment creditor], or (2) could have computed that amount from reasonably available information.") (quoting *KGM Harvesting Co. v. Fresh Network,* 36 Cal. App. 4th 376, 391 (1995)).

KJ-Park persuasively argues that section 3287(a) does not authorize an award of prejudgment interest because Match Group's requested attorneys' fees and costs are disputed and are not sums that are "certain" or "capable of being made certain by calculation" within the

16

1  meaning of that statute. Match Group offers no cogent argument to the contrary. While Match
2  Group correctly notes that courts have held that section 3287(a) "does not apply where
3  prejudgment interest is part of the contractual amount owed," *see Roodenberg*, 171 Cal. App. 4th
4  at 191, for the reasons discussed above, Match Group has not demonstrated that the lease's fees
5  provision provides for prejudgment interest.

6  The Court concludes that section 3287(a) does not mandate an award of prejudgment
7  interest here.

### 2. Section 3287(b)

9  "A court should award prejudgment interest under section 3287(b) only if it is 'reasonable
10 in light of the factual circumstances of a particular case.'" *Workplace Techs. Research, Inc.*, 664
11 F. Supp. 3d at 1157 (quoting *Lewis C. Nelson & Sons v. Clovis Unified Sch. Dist.*, 90 Cal. App.
12 4th 64, 69 (2001)). "While there is no authoritative list of criteria for determining whether an
13 award of discretionary prejudgment interest is reasonable," the Court considers factors including
14 "'(1) the time between the lawsuit's filing and the judgment; (2) whether awarding interest will
15 penalize [KJ-Park] for litigating a bona fide dispute; and (3) whether [Match Group] made
16 settlement offers such that [KJ-Park's] refusal could be construed as placing the prejudgment
17 interest amount at risk.'" *Id.* (quoting *Zargarian v. BMW of N. Am., LLC*, 442 F. Supp. 3d 1216,
18 1226 (C.D. Cal. 2020)).

19 Match Group has not argued a basis for this Court to exercise its discretion to award
20 prejudgment interest under section 3287(b). This action was not pending for a significant period
21 of time, and was litigated in about 18 months from KJ-Park's filing of the complaint to the entry
22 of final judgment. Although Match Group ultimately prevailed on summary judgment, KJ-Park's
23 claims concerned a bona fide dispute over the parties' contractual obligations and liabilities.
24 There is no evidence in the record presented regarding any settlement offers or refusals. In the
25 exercise of its discretion, the Court denies prejudgment interest under section 3287(b).

### III. CONCLUSION

27 Based on the foregoing, the Court orders as follows:
28 1. Match Group's motion for attorneys' fees is granted in part and denied in part and

awards a total of $944,605.08 in fees.

2. Match Group's request for $93,550.03 in non-taxable costs is granted as unopposed.

3. Match Group's request for post-judgment interest on the total award of fees and non-taxable costs pursuant to 28 U.S.C. § 1961 is granted as unopposed.

4. Match Group's motion for prejudgment interest on the total award of fees and non-taxable costs is denied.

By **February 13, 2025**, the parties shall file a joint status report advising whether any further proceedings are necessary and whether the Court should enter an amended judgment (and if so, in what form).

**IT IS SO ORDERED.**

Dated: January 30, 2025

Virginia K. DeMarchi
United States Magistrate Judge