United States District Court
Northern District of California

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

KJ-PARK, LLC,
Plaintiff,
v.
MATCH GROUP, LLC, et al.,
Defendants.

Case No. 23-cv-02346-VKD

**ORDER DENYING DEFENDANTS' MOTION TO EXCLUDE TESTIMONY AND OPINIONS OF CRAIG OWYANG**

Re: Dkt. No. 99

Defendants Match Group, LLC and Match Group, Inc. (collectively, "defendants" or "Match Group") move pursuant to Federal Rule of Evidence 702 to exclude the testimony and opinions of Craig Owyang, a real estate appraiser plaintiff KJ-Park, LLC ("KJ-Park") retained to testify about damages.[1] Dkt. Nos. 99, 112. KJ-Park opposes the motion. Dkt. No. 108. Upon consideration of the moving and responding papers, as well as the oral arguments presented, the Court denies defendants' motion to exclude Mr. Owyang's testimony and opinions.[2]

## I. BACKGROUND

### A. Prior Litigation Proceedings in this Court

This federal diversity action arises out of a commercial lease agreement for a three-story building located at 2555 Park Boulevard in the City of Palo Alto, California ("City"). KJ-Park claimed that Match Group breached the lease agreement and a guaranty, and owes KJ-Park

[1] At the hearing, Match Group confirmed that its motion is limited to Mr. Owyang's opening expert report, and does not concern any rebuttal report.

[2] All parties have expressly consented that all proceedings in this matter may be heard and finally adjudicated by a magistrate judge. 28 U.S.C. § 636(c); Fed. R. Civ. P. 73; Dkt. Nos. 8, 11.

millions of dollars in damages. *See* Dkt. No. 72. Match Group counterclaimed for breach of contract and money had and received, claiming that defendants properly terminated the lease agreement following KJ-Park's own breach of the lease agreement.

For the first year and a half of litigation, the key disputed issue was whether Match Group properly terminated the lease agreement. The focus of the parties' dispute concerned a City retail ordinance. KJ-Park principally contended that it obtained a "vested legal right" to use the entire three-story building as office space well before the parties entered into the lease agreement, regardless of any position to the contrary asserted by the City, and that Match Group therefore had no right to terminate the lease agreement on the basis that KJ-Park failed to deliver premises that complied with the ordinance.

The parties each filed motions for summary judgment. Dkt. Nos. 97, 100. The Court granted summary judgment for Match Group on KJ-Park's claims, denied partial summary judgment to KJ-Park, granted summary judgment for Match Group on its counterclaims, and awarded fees and costs to Match Group. Dkt. Nos. 124, 149. The Court found it unnecessary to address the parties' respective motions (Dkt. Nos. 99, 104) to exclude the testimony and opinions of KJ-Park's damages expert, Craig Owyang, and Match Group's damages expert, Josh Fronen; the Court denied those motions as moot. Dkt. No. 124 at 2 n.2.[3]

**B. Ninth Circuit Appeal**

On appeal to the Ninth Circuit, KJ-Park argued for the first time that the retail ordinance in question was not "Applicable Law" under the "Landlord Work" provision of the parties' lease, and that the ordinance had no bearing on KJ-Park's contractual obligations. The Ninth Circuit agreed and, after construing the lease agreement, found that KJ-Park met its contractual obligations to provide "the base, shell, and core" of the subject building:

> In short, the contract assigns responsibility to KJ-Park for constructing the parts of the Building it was responsible for—the base, shell, and core—in compliance with applicable laws. However, these requirements specifically "exclude[d] any compliance obligations triggered by [Match]'s specific use of . . .

[3] For filed documents, all pin citations refer to the page number appearing in the ECF document header.

> the premises." Similarly, KJ-Park was not responsible for compliance with laws required to obtain a construction permit that were "solely due to the nature of Tenant's improvement or alteration" and specifically contrasts this with "a compliance with law obligation that would be triggered merely by pulling any construction permit." The lease makes KJ-Park responsible for the "base, shell and core" only. Nor does this interpretation "strain[] logic," as Match argues; it assigns compliance to the party responsible for the relevant construction. Even in its own termination letter, Match acknowledged that the March 28, 2019, final inspection approvals from the City "evidence that the Base, Shell and Core were in compliance with Applicable Law."
>
> Because the Ordinance was not "Applicable Law" under the contract, Match was not entitled to terminate the lease and there is no need to reach the issue of whether the Building was in compliance with the Ordinance. Therefore, we conclude that Match was not entitled to summary judgment on KJ-Park's breach-of-contract claim or its counterclaims.

Dkt. No. 157 at 7-8.

The Ninth Circuit reversed and remanded this Court's grant of summary judgment for Match Group on KJ-Park's breach of contract and breach of guaranty claims, as well as on Match Group's counterclaims for breach of contract and for money had and received, and vacated the Court's award of fees and costs. The Ninth Circuit also vacated this Court's denial as moot of the *Daubert* motions regarding damages experts Messrs. Owyang and Fronen. *Id.* at 8-9.

### C. Post-Remand Proceedings

Following the Ninth Circuit's remand, the Court re-set the hearings on the parties' motions regarding Messrs. Owyang and Fronen. *See* Dkt. Nos. 157, 158, 160, 170. This order addresses Match Group's motion to exclude Mr. Owyang's testimony and opinions.

## II. LEGAL STANDARD

Rule 702 of the Federal Rules of Evidence provides that a witness "who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise," if the proponent of the testimony "demonstrates that it is more likely than not" that:

> (a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue;
>
> (b) the testimony is based on sufficient facts or data;
>
> (c) the testimony is the product of reliable principles and methods;

> and
>
> (d) the expert's opinion reflects a reliable application of the principles and methods to the facts of the case.

Fed. R. Evid. 702. Rule 702 was amended, effective December 1, 2023, "to clarify and emphasize that expert testimony may not be admitted unless the proponent demonstrates to the court that it is more likely than not that the proffered testimony meets the admissibility requirements set forth in the rule." Fed. R. Evid. 702 advisory committee's note to 2023 amendment.

Rule 703 further identifies the permissible bases of an expert's opinion testimony, including "facts or data in the case that the expert has been made aware of or personally observed." Fed. R. Evid. 703. Additionally, "[i]f experts in the particular field would reasonably rely on those kinds of facts or data in forming an opinion on the subject, [the facts or data] need not be admissible for the opinion to be admitted." *Id.* "But if the facts or data would otherwise be inadmissible, the proponent of the opinion may disclose them to the [trier of fact] only if their probative value in helping the [trier of fact] evaluate the opinion substantially outweighs their prejudicial effect." *Id.*

Expert testimony is admissible under Rule 702 if it is both relevant and reliable. *See Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579, 597 (1993). The determination of whether expert testimony is admissible is a matter within the Court's discretion, *see Kumho Tire Co., Ltd. v. Carmichael*, 526 U.S. 137, 142 (1999); *Gen'l Elec. Co. v. Joiner*, 522 U.S. 136, 141-43 (1997), and "entails a preliminary assessment of whether the reasoning or methodology underlying the testimony is scientifically valid and of whether that reasoning or methodology properly can be applied to the facts in issue," *Daubert*, 509 U.S. at 592-93. This "basic gatekeeping obligation" applies to all expert testimony, not just scientific testimony. *Kumho*, 526 U.S. at 147. The Court's inquiry is a flexible one, and "whether *Daubert*'s specific factors are, or are not, reasonable measures of reliability in a particular case is a matter that the law grants the trial judge broad latitude to determine." *Id.* at 153. The proponent of expert testimony has the burden of proving admissibility. *Lust v. Merrell Dow Pharm., Inc.*, 89 F.3d 594, 598 (9th Cir. 1996); *see also* Fed. R. Evid. 702 advisory committee's note to 2000 amendment.

United States District Court
Northern District of California

United States District Court
Northern District of California

## III. DISCUSSION

Mr. Owyang is an MAI[4]-credentialed commercial real estate appraiser, who conducted a valuation analysis of the subject property based on an assumption (among others) that Match Group breached the lease agreement. Mr. Owyang concluded that as a result of Match Group's breach, KJ-Park sustained damages in the amount of $10,537,583 as of March 31, 2024, and noted that his "opinion of value will be higher after March 31, 2024." *See* Dkt. No. 99-1 (Ex. 2) at 88.

Match Group moves to exclude Mr. Owyang's testimony and opinions entirely, arguing that Mr. Owyang is not qualified to opine about contract damages, and that his opinions are not the product of reliable principles and methods and do not reflect a reliable application of such principles to the facts of the case. Specifically, Match Group takes issue with the scope and wording of Mr. Owyang's retention letter, and argues that Mr. Owyang has no legal training and no expertise or experience in calculating damages in a lease dispute. Match Group further contends that Mr. Owyang's analysis relies on certain facts that are disputed and that Match Group maintains are inaccurate or incorrect. *See* Dkt. Nos. 99, 112. KJ-Park responds that Mr. Owyang considered three different approaches and ultimately used an income capitalization approach because it is the most suitable approach for calculating net damages in this case. KJ-Park further argues that as an appraiser, Mr. Owyang is experienced and qualified to analyze the income streams from various leases for properties that he appraises. *See* Dkt. No. 108.

The Court is unpersuaded that KJ-Park's retention letter has any bearing on the relevance or reliability of Mr. Owyang's proffered testimony and opinions. As for the remaining issues Match Group raises, the Court agrees with KJ-Park that those matters go to the weight (not admissibility) of Mr. Owyang's testimony and opinions. *See United States v. Garcia*, 7 F.3d 885, 889-90 (9th Cir. 1993). Accordingly, Match Group's motion to exclude Mr. Owyang's testimony and opinions is denied.

## IV. CONCLUSION

For the reasons discussed above, Match Group's motion to exclude Mr. Owyang's

---

[4] Member, Appraisal Institute

testimony and opinions is denied.

**IT IS SO ORDERED.**

Dated: November 12, 2026

Virginia K. DeMarchi
United States Magistrate Judge

United States District Court
Northern District of California