United States District Court
Northern District of California

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

KJ-PARK, LLC,
Plaintiff,
v.
MATCH GROUP, LLC, et al.,
Defendants.

Case No. 23-cv-02346-VKD

**ORDER GRANTING IN PART AND DENYING IN PART PLANTIFF'S MOTION TO EXCLUDE TESTIMONY AND OPINIONS OF JOSH FRONEN AND SETTING FURTHER BRIEFING SCHEDULE**

Re: Dkt. No. 104

Plaintiff KJ-Park, LLC ("KJ-Park") moves pursuant to Federal Rule of Evidence 702 to exclude the testimony and opinions of Josh Fronen, a real estate appraiser defendants retained to testify about damages.[1] Dkt. No. 104, 115. Defendants Match Group, LLC and Match Group, Inc. (collectively, "defendants" or "Match Group") oppose the motion. Dkt. No. 105. Upon consideration of the moving and responding papers, as well as the oral arguments presented, the Court grants in part and denies in part KJ-Park's motion to exclude Mr. Fronen's testimony and opinions, and sets a further briefing schedule as discussed below.[2]

## I. BACKGROUND

### A. Prior Litigation Proceedings in this Court

This federal diversity action arises out of a commercial lease agreement for a three-story building located at 2555 Park Boulevard in the City of Palo Alto, California ("City"). KJ-Park

---

[1] At the hearing, KJ-Park confirmed that its motion is limited to Mr. Fronen's opening expert report, and does not concern any rebuttal report.

[2] All parties have expressly consented that all proceedings in this matter may be heard and finally adjudicated by a magistrate judge. 28 U.S.C. § 636(c); Fed. R. Civ. P. 73; Dkt. Nos. 8, 11.

claimed that Match Group breached the lease agreement and a guaranty, and owes KJ-Park millions of dollars in damages. *See* Dkt. No. 72. Match Group counterclaimed for breach of contract and money had and received, claiming that defendants properly terminated the lease agreement following KJ-Park's own breach of the lease agreement.

For the first year and a half of litigation, the key disputed issue was whether Match Group properly terminated the lease agreement. The focus of the parties' dispute concerned a City retail ordinance. KJ-Park principally contended that it obtained a "vested legal right" to use the entire three-story building as office space well before the parties entered into the lease agreement, regardless of any position to the contrary asserted by the City, and that Match Group therefore had no right to terminate the lease agreement on the basis that KJ-Park failed to deliver premises that complied with the ordinance.

The parties each filed motions for summary judgment. Dkt. Nos. 97, 100. The Court granted summary judgment for Match Group on KJ-Park's claims, denied partial summary judgment to KJ-Park, granted summary judgment for Match Group on its counterclaims, and awarded fees and costs to Match Group. Dkt. Nos. 124, 149. The Court found it unnecessary to address the parties' respective motions (Dkt. Nos. 99, 104) to exclude the testimony and opinions of KJ-Park's damages expert, Craig Owyang, and Match Group's damages expert, Josh Fronen; the Court denied those motions as moot. Dkt. No. 124 at 2 n.2.[3]

**B. Ninth Circuit Appeal**

On appeal to the Ninth Circuit, KJ-Park argued for the first time that the retail ordinance in question was not "Applicable Law" under the "Landlord Work" provision of the parties' lease, and that the ordinance had no bearing on KJ-Park's contractual obligations. The Ninth Circuit agreed and, after construing the lease agreement, found that KJ-Park met its contractual obligations to provide "the base, shell, and core" of the subject building:

> In short, the contract assigns responsibility to KJ-Park for constructing the parts of the Building it was responsible for—the base, shell, and core—in compliance with applicable laws.

[3] For filed documents, all pin citations refer to the page number appearing in the ECF document header.

> However, these requirements specifically "exclude[d] any compliance obligations triggered by [Match]'s specific use of . . . the premises." Similarly, KJ-Park was not responsible for compliance with laws required to obtain a construction permit that were "solely due to the nature of Tenant's improvement or alteration" and specifically contrasts this with "a compliance with law obligation that would be triggered merely by pulling any construction permit." The lease makes KJ-Park responsible for the "base, shell and core" only. Nor does this interpretation "strain[] logic," as Match argues; it assigns compliance to the party responsible for the relevant construction. Even in its own termination letter, Match acknowledged that the March 28, 2019, final inspection approvals from the City "evidence that the Base, Shell and Core were in compliance with Applicable Law."
>
> Because the Ordinance was not "Applicable Law" under the contract, Match was not entitled to terminate the lease and there is no need to reach the issue of whether the Building was in compliance with the Ordinance. Therefore, we conclude that Match was not entitled to summary judgment on KJ-Park's breach-of-contract claim or its counterclaims.

Dkt. No. 157 at 7-8.

The Ninth Circuit reversed and remanded this Court's grant of summary judgment for Match Group on KJ-Park's breach of contract and breach of guaranty claims, as well as on Match Group's counterclaims for breach of contract and for money had and received, and vacated the Court's award of fees and costs. The Ninth Circuit also vacated this Court's denial as moot of the *Daubert* motions regarding damages experts Messrs. Owyang and Fronen. *Id.* at 8-9.

### C. Post-Remand Proceedings

Following the Ninth Circuit's remand, the Court re-set the hearings on the parties' motions regarding Messrs. Owyang and Fronen. *See* Dkt. Nos. 157, 158, 160, 170. This order addresses KJ-Park's motion to exclude Mr. Fronen's testimony and opinions.

## II. LEGAL STANDARD

Rule 702 of the Federal Rules of Evidence provides that a witness "who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise," if the proponent of the testimony "demonstrates that it is more likely than not" that:

> (a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue;
>
> (b) the testimony is based on sufficient facts or data;



United States District Court
Northern District of California

> (c) the testimony is the product of reliable principles and methods; and
>
> (d) the expert's opinion reflects a reliable application of the principles and methods to the facts of the case.

Fed. R. Evid. 702. Rule 702 was amended, effective December 1, 2023, "to clarify and emphasize that expert testimony may not be admitted unless the proponent demonstrates to the court that it is more likely than not that the proffered testimony meets the admissibility requirements set forth in the rule." Fed. R. Evid. 702 advisory committee's note to 2023 amendment.

Rule 703 further identifies the permissible bases of an expert's opinion testimony, including "facts or data in the case that the expert has been made aware of or personally observed." Fed. R. Evid. 703. Additionally, "[i]f experts in the particular field would reasonably rely on those kinds of facts or data in forming an opinion on the subject, [the facts or data] need not be admissible for the opinion to be admitted." *Id.* "But if the facts or data would otherwise be inadmissible, the proponent of the opinion may disclose them to the [trier of fact] only if their probative value in helping the [trier of fact] evaluate the opinion substantially outweighs their prejudicial effect." *Id.*

Expert testimony is admissible under Rule 702 if it is both relevant and reliable. *See Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579, 597 (1993). The determination of whether expert testimony is admissible is a matter within the Court's discretion, *see Kumho Tire Co., Ltd. v. Carmichael*, 526 U.S. 137, 142 (1999); *Gen'l Elec. Co. v. Joiner*, 522 U.S. 136, 141-43 (1997), and "entails a preliminary assessment of whether the reasoning or methodology underlying the testimony is scientifically valid and of whether that reasoning or methodology properly can be applied to the facts in issue," *Daubert*, 509 U.S. at 592-93. This "basic gatekeeping obligation" applies to all expert testimony, not just scientific testimony. *Kumho*, 526 U.S. at 147. The Court's inquiry is a flexible one, and "whether *Daubert*'s specific factors are, or are not, reasonable measures of reliability in a particular case is a matter that the law grants the trial judge broad latitude to determine." *Id.* at 153. The proponent of expert testimony has the burden of proving admissibility. *Lust v. Merrell Dow Pharm., Inc.*, 89 F.3d 594, 598 (9th Cir. 1996); *see also* Fed. R. Evid. 702 advisory committee's note to 2000 amendment.

## III. DISCUSSION

Mr. Fronen is an MAI[4]-credentialed commercial real estate appraiser, who conducted a valuation analysis of the subject property. As discussed at the hearing, in his report Mr. Fronen appears to offer two opinions. The first opinion concerns Mr. Fronen's valuation of KJ Park's damages, which he calculates to be $3,244,934 as of October 2023. *See* Dkt. No. 104-2 at 95. With respect to the second opinion, which Mr. Fronen refers to as a "Net Windfall Analysis," Mr. Fronen purports to appraise the value of the subject property at the time of KJ-Park's October 2023 sale and opines that Match Group's termination of the lease resulted in no net damages to KJ-Park. Rather, Mr. Fronen concludes that KJ-Park obtained a "windfall" of $14,305,066. *See id.* at 95-96.

KJ-Park does not take issue with Mr. Fronen's qualifications or his valuation methods. *See* Dkt. No. 115 at 6. However, KJ-Park argues that in applying those methods, Mr. Fronen improperly used the sales price of the property to offset pre-sale damages caused by Match Group's alleged breach of the lease agreement. *See id*. KJ-Park confirms that it does not seek damages for any lost rent post-dating the sale of the property, or for diminution in value of the property, as a consequence of Match Group's alleged breach of the lease and guaranty. *See id*. at 5. KJ-Park contends that as a matter of law, the sales price of the property is irrelevant to pre-sale damages for breach of a lease, and that Match Group cannot use the sales price to offset such damages. KJ-Park argues that Mr. Fronen's opinions and testimony are therefore irrelevant and should be excluded on that basis.

Noting that the operative amended complaint alleges that KJ-Park sold the subject property to "recoup its losses" (*see* Dkt. No. 72 ¶ 28), in their written opposition, defendants argue that that they are entitled to demonstrate the amount of rental loss that KJ-Park reasonably could have avoided over the period KJ-Park claims that Match Group is liable for rent payments. Defendants further maintain that Mr. Fronen's analysis—including comparable rental properties, a market capitalization rate, and comparison to rental streams in Palo Alto—is legally relevant and

[4] Member, Appraisal Institute

appropriate to establish KJ-Park's mitigation of rental losses through the sale of the property. *See* Dkt. No. 105.

To the extent Match Group seeks to offer Mr. Fronen's testimony regarding his first opinion calculating KJ-Park's pre-sale damages as of October 2023, KJ-Park's motion to exclude such testimony and opinion is denied. The Court finds Mr. Fronen's damages valuation analysis to be relevant and admissible under Rule 702. At the hearing, KJ-Park did not seriously dispute that Mr. Fronen's damages valuation is an appropriate subject of expert testimony; as noted above, KJ-Park does not challenge Mr. Fronen's qualification to offer such testimony and opinion. Any matters concerning Mr. Fronen's damages valuation are appropriately left to cross-examination and presentation of evidence at trial.

However, KJ-Park's motion to exclude Mr. Fronen's testimony and opinions is granted to the extent Match Group seeks to present Mr. Fronen's second opinion—i.e., his "windfall" analysis regarding mitigation of the loss of pre-sale rent. At the hearing, Match Group stated that it would not seek to offer Mr. Fronen's testimony and opinions regarding the sale of the property as an "offset" of KJ-Park's damages. Indeed, the law is clear that the sale of the subject property cannot mitigate the loss of pre-sale rent. *See* Cal. Civil Code § 1951.2; *First Nat. Mortg. Co. v. Federal Realty Inv. Trust*, 633 F. Supp. 2d 985 (N.D. Cal. 2009); *Lu v. Grewal*, 130 Cal. App. 4th 841 (2005); *Millikan v. Am. Spectrum Real Est. Servs. Cal., Inc.*, 117 Cal. App. 4th 1094 (2004).

At the motion hearing, Match Group raised, for the first time, a new argument that Mr. Fronen's "windfall" analysis (or some portion of it) is relevant and admissible with respect to the "reasonableness" of KJ-Park's mitigation efforts as to any claimed pre-sale loss of rent. Based on the arguments presented at the hearing, the Court understands that Match Group seeks to present Mr. Fronen's testimony and opinions in support of a theory that KJ-Park should have sold the property earlier and/or charged higher rent. The Court does not read Mr. Fronen's report as presenting any such theory or opinion. However, as issues concerning KJ-Park's damages and mitigation efforts are key questions, and for the reasons discussed at the hearing, the Court will permit further briefing on the question of what testimony or opinions in Mr. Fronen's *existing* expert report—beyond his damages valuation analysis—properly may be admitted regarding the

United States District Court
Northern District of California

reasonableness of KJ-Park's mitigation efforts in the pre-sale period. The parties shall file their supplemental briefing as follows:

1. By **November 20, 2026**, Match Group shall file a supplemental brief identifying what portions of Mr. Fronen's *existing* opening report defendants will rely on and for what purpose. To be clear, Match Group is not permitted to modify or supplement Mr. Fronen's existing report or to offer a new expert report. Match Group's brief shall not exceed 10 pages.

2. By **December 3, 2026**, KJ-Park shall file its response, which shall not exceed 10 pages.

3. There will be no reply. Upon submission of the papers, the Court will determine what further proceedings (if any) may be necessary, or if the matter may be determined on the papers without further argument.

## IV. CONCLUSION

For the reasons discussed above, the Court grants in part and denies in part KJ-Park's motion to exclude Mr. Fronen's testimony and opinions, consistent with the rulings above. The Court reserves further rulings on what testimony and opinions (if any) Mr. Fronen may offer beyond his first opinion (the damages valuation analysis), pending submission of the parties' supplemental briefing.

**IT IS SO ORDERED.**

Dated: November 12, 2026

Virginia K. DeMarchi
United States Magistrate Judge